UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-9  BEVERLY COOPER,

        Defendant.
_____/

No. 2:12-cr-20272
Hon. Victoria A. Roberts

**UNITED STATES' MOTION TO AMEND
CONDITIONS OF RELEASE OF DEFENDANT BEVERLY COOPER**

Pursuant to 18 U.S.C. § 3145(a), the United States respectfully submits this motion to amend the conditions of pre-trial release set for defendant BEVERLY COOPER (COOPER).

**I.  Background**

On September 11, 2012, a grand jury returned a sealed indictment charging COOPER with conspiracy to commit health care fraud, 18 U.S.C. § 1349, for her role in a home health care fraud scheme operating in and around Detroit, Michigan. The indictment was unsealed and COOPER was arrested on September 20, 2012. At her initial appearance, the government did not seek detention. The government did request that the Court add as a bond condition an order prohibiting COOPER from billing Medicare or causing Medicare to be billed. The government made the same request with respect to other defendants in the case.

At her initial appearance COOPER expressed concern that this bond condition may cause her to lose her current job or prevent her from finding another job. COOPER argued that because she had no role in billing Medicare in her current job, the bond condition should not apply to her. Presiding United States Magistrate Judge Mark Randon – who had previously imposed the "no-causing-Medicare-to-be-billed" condition in this and other health care fraud cases – said that COOPER should not be prohibited from working for a company that billed Medicare.

In response, government counsel noted that it had no objection to COOPER working while her trial was pending. Counsel explained that this bond condition would still allow COOPER – a registered nurse – to work for clients covered by private, non-governmental insurers. Government counsel also explained that other health care fraud defendants who have been given the same bond condition have found employment in the medical field providing service to privately-insured patients. Judge Randon did not agree with counsel, and declined to add the bond condition.

## II.     Legal Standard Governing Detention and Conditions of Pre-Trial Release

The Bail Reform Act provides, in relevant part, that a defendant should be released on bail on the least restrictive condition or combination of conditions that will reasonably assure (1) the defendant's appearance at trial, and (2) the safety of the community. See 18 U.S.C. § 3142(c)(1)(B). A defendant's risk of flight requires proof by a preponderance of the evidence. To show that a defendant poses a danger to the community requires "clear and convincing evidence." See 18 U.S.C. § 3142(f).

When determining whether to detain a defendant, or the conditions of the defendant's pre-trial release, the Court must assess "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). "Danger" is not confined to physical danger – courts have recognized that danger also manifests in the economic harm a defendant may pose to a community. "There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act." United States v. Giordano, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005); see also United States v. King, 849 F.2d 485, 487 n.2 (11th Cir. 1988) ("[t]he term 'dangerousness,' as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly understood in everyday

2

parlance . . . . [It] refers to the danger that the defendant might engage in criminal activity to the detriment of the community."); United States v. Reynolds, 956 F.2d 192 (9th Cir. 1992) (holding that economic danger to community is basis for detention under Bail Reform Act); United States v. Carr, 2012 WL 3262821, at *5-6 (N.D. Ill. Aug. 9, 2012) (revoking bond for doctor who engage in health care fraud while out on bond for a health care fraud offense; compiling cases on economic danger to community); United States v. Persaud, 2007 WL 1074906 (N.D.N.Y. 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); United States v. DeSimone, 2009 WL 904688 at *2 (D.R.I. 2009) ("'danger' under 18 U.S.C. § 3142(g)(4) may, at least in certain cases, extend to pecuniary or economic harm").

### III. The Bond Condition Prohibiting COOPER from Causing Medicare to Be Billed Should be Applied To COOPER as It Has Been Applied to Other Health Care Fraud Defendants

The government requests that the Court amend Judge Randon's bond order and augment COOPER's bond conditions to include a prohibition against billing Medicare or causing Medicare to be billed while she awaits trial. The government regularly seeks this condition – in this district and in federal courts across the country – because Medicare fraud is often difficult to detect immediately, and criminals often continue to defraud Medicare even after they are charged. For these reasons, courts have routinely deemed the instruction that a defendant refrain from causing Medicare to be billed a reasonable preventive measure. Indeed, Judge Randon himself has imposed this condition in this case and others, and when defendants sought to remove it, this Court agreed that it was a reasonable measure and left it in place. See, e.g., United States v. Sharma, 12-cr-20272, Doc. 77 ("Defendant must avoid all contact with Medicare/ Medicaid Beneficiary Information, except to the extent that she and her counsel must review that information to prepare for trial."); United States v. English, 12-cr-20269, Doc. 66 ("[b]ecause of the nature of the charge and allegations in the Indictment, the Court will maintain

the condition that these Defendants may not use, or permit the use of, their PINs to bill Medicare. Nor may they order items or services for a Medicare beneficiary that might later be used to bill Medicare.").

For the same reasons that this bond condition was applied to health care fraud defendants in this case and others, it should apply to COOPER. It is a reasonable prophylactic measure because the evidence in this case shows that COOPER poses a significant economic threat to the community. Cf. 18 U.S.C. § 3142(g)(4).

The evidence underlying COOPER's indictment reveals that she was an integral figure in the fraud scheme in at least three companies at the center of the Indictment: Reliance Home Care, LLC (Reliance), First Choice Home Health Care Services, Inc. (First Choice), and Accessible Home Care, Inc. (Accessible). The investigation revealed that at these companies, COOPER used her education and training as a registered nurse to create and alter patient files – specifically OASIS forms and patient visit notes – to give the false impression that she had provided home health care. COOPER admitted to federal investigators that she had created, altered, and signed OASIS forms and visit notes for home health care that she did not provide. These false documents were then used by these companies to bill Medicare for home health care supposedly provided to the Medicare beneficiaries identified in these files. Additionally, COOPER has admitted to federal agents that when government inspectors visited these companies, she would participate in staged patient visits, wherein she would pretend to be an employee (usually the "Director of Nursing") and would "treat" fake patients - all to give inspectors the false impression that the company was providing legitimate home health care.

Health care fraud is both a major national and community problem, and poses an economic danger to the community. In the last three years, at least 166 individuals have been indicted in the Eastern District of Michigan in connection with a number of Medicare fraud schemes involving over $244 million in fraudulent billings to Medicare. In this case, First Choice, Reliance, and Accessible

received more than $17.2 million from Medicare as a result of the fraud.  The evidence reveals that COOPER personally reaped substantial benefits by her participation in the scheme.  A preliminary review of bank records subpoenaed in this investigation showed that COOPER was paid approximately $355,955 from her work at three home health companies.

Importantly for the purposes of this motion, although COOPER played no role in billing at these companies, she played an essential role in the scheme.  She relied upon her nursing training and experience to create fake OASIS forms and visit notes – documents upon which these companies relied to defraud Medicare.  Thus, COOPER's argument – that she should be allowed to continue in her current position because she plays no role in billing at her current job – misses the point.  Indeed, COOPER's primary value to any fraud scheme would not be as a biller, but as a nurse creating visit notes.  And under her current bond conditions, there is absolutely nothing that would prevent her from continuing to fabricate or sign visit notes and forms for services that she did not provide.  The absence of this bond condition in this instance is exacerbated because it would be exceptionally difficult to ascertain whether the Medicare beneficiaries to whom COOPER purportedly renders services had a medical need for this care, or were in fact provided this care.  Accordingly, a limited bond condition restricting her from treating or purporting to treat Medicare beneficiaries would alleviate this risk, would curtail her economic threat to the community, and at the same time would provide her an opportunity to continue to work before her trial.

For these reasons, and given the seriousness of the charge against her, the government seeks a prohibition against COOPER performing services for Medicare beneficiaries.  This bond condition has been applied to health care fraud defendants in this district and across the country.  Further, it is not too burdensome:  the government has no objection to COOPER providing care for patients who are insured by non-governmental carriers, whom COOPER has not been

charged with defrauding. COOPER is highly trained and highly qualified, and ample employment opportunities exist for registered nurses in the Detroit area. Given these other employment options, and in light of the seriousness of the charge against her, the added bond condition would be a reasonable preventive measure.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court add as a condition to COOPER's pre-trial release a bond condition prohibiting COOPER from billing Medicare or causing Medicare to be billed.

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
Wayne.Pratt@usdoj.gov

GEJAA T. GOBENA
Assistant Chief
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 305-1310
Gejaa.Gobena@usdoj.gov

/s WILLIAM G. KANELLIS
WILLIAM G. KANELLIS
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 674-5661
william.kanellis2@usdoj.gov

Dated: October 3, 2012